# Earl W. and Pauline L. Richardson v. City of Rutland, McDonald's Corp. and John Kollmer

[671 A.2d 1245]

No. 95-094

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ., and Maloney, Supr. J., Specially Assigned

Opinion Filed November 3, 1995

Motion for Reargument Denied December 11, 1995

*William E. Roper* of *Neuse, Smith, Roper & Venman, P.C.*, Middlebury, for Plaintiffs-Appellants.

*Henry C. Brislin*, Assistant City Attorney, Rutland, for Defendants-Appellees City of Rutland and Kollmer.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee McDonald's Corp.

**Dooley, J.** Plaintiffs Earl and Pauline Richardson appeal the Rutland Superior Court's dismissal of their mandamus action against the City of Rutland and its zoning administrator, and further appeal the terms of an injunction granted against McDonald's Corporation. The dispute centers around a McDonald's Restaurant parking lot, part of which is located in a residential zone, and the denial of a variance for the lot construction in the residential zone. Plaintiffs, who are neighbors, sought to have the offending portion of the parking lot returned to its original condition and were only partially successful below. We affirm the mandamus dismissal and the scope of the injunction as reasonable and within the court's discretion.

On December 11, 1981, McDonald's sought a zoning permit from the City of Rutland to build a restaurant in a commercial zone. It also applied for a variance of twenty-five feet to use the part of its lot that fell in a residential zone for parking. This litigation deals with the twenty-five-foot residential strip. Prior to any construction, the strip was a swampy wetland lying approximately five feet below the surrounding grade.

On February 17, 1982, the zoning permit was approved and the variance granted by the Rutland Board of Zoning Adjustment. Plaintiffs, owners of land 450 feet from the McDonald's Restaurant, appealed to superior court. Meanwhile, McDonald's sought and obtained a building permit and built the restaurant and the parking lot as proposed. It added earth fill to the variance area to bring it up to the elevation of the surrounding grade and poured concrete over it. It installed lights, dry well pipes for a stormwater drainage system, and trees and dense hedges for landscaping.

On April 15, 1987, the superior court denied the variance, and we affirmed in *In re McDonald's Corp.*, 151 Vt. 346, 560 A.2d 362 (1989). McDonald's did not, however, discontinue use of the residential strip for parking. On April 23, 1989, plaintiffs wrote to the Rutland Zoning Administrator requesting he take action to require that McDonald's restore the strip to its original condition. On March 12, 1990, the zoning administrator sent a letter to McDonald's regarding the

twenty-five-foot strip. Thereafter, the local manager of the Rutland McDonald's Restaurant met with the zoning administrator at the site, measured the zoning boundary, and erected a barrier to block any further use of the parking area in the residential strip. The zoning administrator approved the barrier as complying with Residence A zoning, although this decision was not communicated to plaintiffs.

On June 8, 1990, plaintiffs filed this action seeking a writ of mandamus requiring the City of Rutland and the zoning administrator to bring suit against McDonald's for removal of the parking lot from the twenty-five-foot variance area. The City filed a motion to dismiss. On May 24, 1991, the court granted the motion and dismissed the mandamus action.

Plaintiffs also sought an injunction requiring McDonald's to restore the variance area to its original condition. Although the court ordered injunctive relief, the scope was less than plaintiffs requested. The court ordered McDonald's to remove the concrete and lights from the variance area, to remove or fill the drainage pipes, and to place topsoil or other fill over the pavement. McDonald's complied with the injunction.

Plaintiffs first argue they properly sought enforcement of a ministerial duty of the zoning administrator, and therefore, the dismissal of the mandamus action was in error. In contrast, the City maintains that plaintiffs do not have a right to issuance of a writ of mandamus because the administrator's actions were discretionary, not ministerial.

Mandamus is a remedial tool which mandates the performance of a nondiscretionary duty. See *State v. Forte*, 159 Vt. 550, 555, 624 A.2d 352, 356 (1993). Mandamus will not lie for the review of acts that involve the exercise of judgment or discretion. See *Bargman v. Brewer*, 142 Vt. 367, 369, 454 A.2d 1253, 1255 (1983); Dobbs, Remedies § 2.10, at 112 (1973) ("[It] is used only to compel a specific kind of behavior — compliance with a ministerial duty of an office. It does not issue to compel action that is discretionary."). There is, however, an exception: "Where there appears, in some form, an arbitrary abuse of the power vested by law in an administrative officer . . . which amounts to a virtual refusal to act or to perform a duty imposed by law, mandamus may be resorted to in the absence of other adequate legal remedy." *Couture v. Selectmen of Berkshire*, 121 Vt. 359, 361, 159 A.2d 78, 80 (1960); see also *Roy v. Farr*, 128 Vt. 30, 34-36, 258 A.2d 799, 802-03 (1969) (applying *Couture* standard to refusal to act by local health board and health officer).

Recently, we applied the *Couture* rule to affirm the grant of a writ of mandamus against a zoning administrator in *In re Fairchild*, 159 Vt. 125, 131, 616 A.2d 228, 231 (1992). Plaintiffs argue that *Fairchild* governs this case and demonstrates that dismissal of the mandamus action was error. Like this case, *Fairchild* involved a petition for mandamus to require a municipality to enforce its zoning ordinance against a property owner who the plaintiffs alleged was in violation of the zoning ordinance.

There is, however, a significant difference between this case and *Fairchild*. Here, although the zoning administrator was dilatory, he did act. He required McDonald's to comply with the ordinance and approved a remedy for the past noncompliance. The remedy, albeit unsatisfactory to plaintiffs, ended use of the residential strip for commercial purposes.

In contrast, the zoning administrator in *Fairchild* failed to respond directly to plaintiffs, despite their demand for enforcement, and stated to others that he thought the property owners were in compliance with the zoning ordinance. He was, therefore, permitting noncompliance with the zoning ordinance, which he had no power to do. See 24 V.S.A. § 4442(a); *In re Fairchild*, 159 Vt. at 130, 616 A.2d at 231 (holding that administrative officer has no discretion as to whether to enforce zoning regulations). In the words of *Couture*, there was "a virtual refusal to act or to perform a duty imposed by law." 121 Vt. at 361, 159 A.2d at 80.

We find the difference to be determinative. A zoning administrator is statutorily bound to enforce a municipality's zoning bylaws, 24 V.S.A. § 4445, but the nature of the remedy sought is discretionary. Thus, an administrator has the discretion to initiate "any appropriate action, injunction or other proceeding to prevent, restrain, correct or abate" a violation. See *id.* Here, the zoning administrator pursued a remedy within his discretion, and it cannot be said that he failed to act or perform a duty imposed by law. The court acted properly in dismissing the mandamus claim.*

---

*Defendants urge us to reach the same result on jurisdictional grounds. They argue that the superior court did not have jurisdiction because plaintiffs did not appeal the zoning administrator's decision to the zoning board as required by 24 V.S.A. § 4472. See *Town of Charlotte v. Richmond*, 158 Vt. 354, 357, 609 A.2d 638, 639-40 (1992) (holding that defendant landowners, having failed to appeal determination of zoning administrator, were bound by that decision). We have not decided whether an interested party, rather than the landowner, ever has a duty to appeal from a zoning administrator's inaction. See *In re Fairchild*, 159 Vt. at 131, 616 A.2d at 232 (assuming, but not

Plaintiffs' remaining claims relate to the scope of the injunction issued by the court. Plaintiffs assert that they are entitled to an injunction that requires the variance area to be returned to its original state, without the fill and the drainage pipes. The trial court declined to go that far because removal of the fill would necessitate construction of a seven-foot retaining wall to provide support for the structures that properly lie within the commercial zone. The court found the cost of the wall to be unreasonable and that "it would be far more unsightly and undesirable than the continuation of the slope created by the added fill."

We first address which of the two alternatives presented by the parties is the standard applicable to the injunction request. The first alternative, advocated by McDonald's and employed by the trial court, gives discretion to the court to determine whether to issue an injunction based on a balancing of the equities. Under this standard, "[i]t is the duty of the court of chancery to consider and weigh the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief." *Thompson v. Smith*, 119 Vt. 488, 509, 129 A.2d 638, 651-52 (1957). The second alternative, advocated by plaintiffs, requires the court to issue an injunction to remove noncomplying development unless the violation of the zoning ordinance is insubstantial or was done without conscious wrongdoing. *Town of Sherburne v. Carpenter*, 155 Vt. 126, 131-32, 582 A.2d 145, 149 (1990).

We explained in *Carpenter* that the second alternative applies in the zoning context only to proceedings brought by a municipality. *Id.* at 131, 582 A.2d at 149. This is a case between private landowners. Plaintiffs, not the City of Rutland, sought an injunction requiring McDonald's to remove all earth fill from the residential strip. As a result, the *Thompson* standard applies to the trial court's actions.

Plaintiffs make various arguments to avoid this conclusion. They argue that they are acting from public motives to ensure enforcement of the zoning ordinance. They further argue that McDonald's acted illegally in extending the parking lot into the residential zone while their variance was on appeal. These factors may be relevant to how the court exercises its discretion, but are not

deciding, that interested persons have duty to appeal pursuant to § 4472). It would be inappropriate to dismiss this case for failure to pursue an administrative appeal, because the administrator never made a formal ascertainable decision and never conveyed a decision to plaintiffs, despite their requests for action.

determinative of the applicable standard faced by the trial court. The court's discretion is not narrowed by plaintiffs' motives. The illegality of the use establishes the zoning violation, but is not determinative of the remedy.

Although we have addressed the standard issue in the way presented by plaintiffs, we also stress that the alternative standards go primarily to whether an injunction should be used as a remedy and not necessarily to the terms of the injunction, at least where the injunction corrects the illegality. Courts have "a wide range of discretion" to mold equitable decrees to the circumstances of the case before them. *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185 (1944); see also *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir. 1992) ("contours of an injunction are shaped by the sound discretion of the trial judge and, barring an abuse of that discretion, they will not be altered on appeal"). Moreover, "'injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs.'" *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765, 114 S. Ct. 2516, 2525 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682 (1979)). These principles apply in the zoning context whether or not relief is sought by a public enforcement agency, and they clearly apply here.

█ Finally, we conclude that the court exercised its discretion reasonably in fashioning the injunction in this case. It clearly prohibited any use of the residential strip that was in conflict with zoning requirements. It required the removal or concealment of all "commercial structures" in the variance area. In doing so, the existing landscape was preserved, and a buffer was created between the commercial and residential zones. It balanced the equitable considerations before it and concluded that the remedy plaintiffs sought was unnecessarily expensive and went beyond what was required to afford complete relief.

We are sympathetic to plaintiffs' concerns. For many years, they have been seeking compliance with the zoning ordinance, and when they finally prevailed in our courts, they were faced with defiance by McDonald's and only begrudging action by the city. We note part of this action involved a claim for damages and that part has now been settled. The damages remedy is more appropriate for the kind of claim plaintiffs now raise than issuance of an injunction which would render the condition of the land "unsightly and undesirable," as the trial court found.

*Affirmed.*